In accordance with the directives of the North Carolina Court of Appeals, the Full Commission finds as fact and concludes as a matter of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The date of injury which is the subject of this claim is 1 April 1992.
2. On 1 April 1992, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
3. On the date of injury, the employer-employee relationship existed between plaintiff and defendant-employer.
4. On the date of injury, defendant-employer employed three or more employees.
5. Plaintiff has not received weekly compensation from the date of injury to present.
6. Employer is insured through Liberty Mutual Insurance Company.
7. Plaintiffs average weekly wage is to be determined by a Form 22.
8. In addition to the above stipulated evidence, the following evidence was also stipulated:
a. Form 22 dated May 19, 1994.
b. The 63-page package of medical records and reports.
c. Answer to interrogatories.
d. Employment records.
e. Transcript of the recorded statement and other documents.
***********
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff began working for defendant-employer in 1969. As of the date of hearing, she had worked for over 12 years as a general straightening operator. Her job involved operating a machine which straightened coils of metal. Plaintiffs job duties required her to pull the metal from one spool approximately 16 feet and cut the metal if it was too thick. She further straightened and spliced the metal, placing the metal on another spool. Depending on the metal, plaintiff would do this for up to 30 times a day. In performing her job, she would load the material into the machine, make necessary adjustments to the machine, remove defective material from the reel, weld strips together when necessary and unload the spool of material from the end of the line. She was required to use a metal cutter 20 to 25 times each day to cut samples from the material. The cutter had a lever which she would pull down in order to activate the blade. Plaintiff needed to do rapid, continuous movement of her fingers and wrists in order to perform her job duties.
2. In December 1989 plaintiff went to Dr. Keeling with complaints of pain in both hands along the median nerve distribution. He had nerve tests performed and then diagnosed her condition as bilateral carpal tunnel syndrome. Her right hand was worse than the left, so Dr. Keeling performed surgery to her right hand on 9 March 1989. Her condition improved following the surgery and she subsequently returned to work for defendant-employer.
3. According to the Form 22 wage charts submitted into evidence, plaintiff stopped working on 1 April 1992. On 6 April 1992, plaintiff saw Dr. Smith for complaints of severe progressive numbness in her left hand and arm which had worsened significantly over the previous two months. Dr. Smith ordered nerve tests which were positive for carpal tunnel syndrome. Consequently, on 24 April 1992, Dr. Smith performed carpal tunnel release at Annie Penn Memorial Hospital. Plaintiff was kept out of work until 13 July 1992, when she was released for restricted duty. Plaintiff has remained at work since being released from the last surgery.
4. Plaintiff continued to experience symptoms after surgery but they were along the ulnar nerve distribution. Dr. Smith treated her with medication and advised her not to engage in rapid and continuous movements of her hands and arms.
5. Plaintiffs job did involve rapid and continuous movements of her hands and arms. Plaintiff has established that her work activities placed her at an increased risk of developing carpal tunnel syndrome as compared to the general public not so employed. Further, Dr. Smith was of the opinion that plaintiffs job activities had aggravated her condition, and the job itself placed plaintiff in a position of developing carpal tunnel syndrome as compared to the general public.
6. Plaintiff has proven that her carpal tunnel syndrome was aggravated by her job activities and is an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment and which excluded all ordinary diseases of life to which the general public was equally exposed.
7. The Full Commission at this time will not address the issue of permanent partial disability. There has been no permanent partial disability rating, if any, of plaintiffs condition by a physician.
***********
In accordance with the directives of the North Carolina Court of Appeals and based upon the findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff has proven that she developed an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment and which is an ordinary disease of life to which the general public was equally exposed. N.C. Gen. Stat. 97-53(13); Booker v. Duke Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979).
2. Plaintiff is entitled to temporary total disability benefits for the period of 1 April 1992 to 13 July 1992, at a compensation rate of $194. 17 per week under the Workers Compensation Act for her carpal tunnel syndrome. N.C. Gen. Stat. 97-29.
3. Defendants shall pay all medical bills incurred or to be incurred as a result of plaintiffs occupational disease. N.C. Gen. Stat. 97-25.
***********
In accordance with the directives of the North Carolina Court of Appeals and based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiffs claim for workers compensation benefits as a result of her occupational disease is GRANTED.
2. Plaintiff is entitled to receive temporary total disability benefits for a period of fourteen and five-sevenths weeks at a rate of $194. 17 per week. This sum has accrued and shall be paid in a lump sum subject to the attorneys fee approved below.
3. Defendants shall pay all medical bills incurred or to be incurred by plaintiff as a result of her compensable injury.
4. An attorneys fee of twenty-five percent is approved for plaintiffs counsel and shall be paid in one lump sum.
5. The issue of what amount of permanent partial disability, if any, is due plaintiff shall be reserved for subsequent determination.
6. Defendants shall pay costs.
This the ___ day of June, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________ DIANNE C. SELLERS COMMISSIONER